**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ryan Christopher Melton,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>   Defendant. | No. CV-14-02144-PHX-JAT<br><br>**ORDER** |

   Plaintiff Ryan Christopher Melton ("Plaintiff") appeals the Commissioner of Social Security's (the "Commissioner") denial of a request for waiver of recovery for overpayment of Social Security benefits. The Court now rules on his appeal.

**I.    Factual and Procedural Background**

   On December 1, 2003, Plaintiff was found to be disabled by the Social Security Administration ("SSA"), based upon mental impairments which included Tourette's Syndrome, bipolar disorder, attention deficit disorder, and obsessive compulsive disorder. (Tr. at 24). On May 1, 2004, Plaintiff began receiving Supplemental Security Income ("SSI"). (Tr. at 48). In 2006, Plaintiff began working. (Tr. at 64, 159). During this time, Plaintiff's monthly earnings exceeded the amount permitted by the SSA to still receive supplemental income. (Tr. at 64, 66-67). In November 2010, the SSA terminated Plaintiff's benefits retroactively to November 2007 and demanded repayment of $39,417.10 for benefits paid after that date. (Tr. at 70).

   Plaintiff's initial request for waiver of the overpayment and subsequent requests

for reconsideration were denied. (Tr. at 75, 98-101, 108, 114). On October 19, 2012, an Administrative Law Judge ("ALJ") conducted a hearing to review Plaintiff's request for waiver. (Tr. at 150-89). On December 12, 2012, the ALJ denied Plaintiff's request to waive the overpayment of benefits and found Plaintiff liable for $36,916.10.[1] (Tr. at 19-21). After the SSA Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner. (Tr. at 4-6). Plaintiff then timely filed an appeal with the Court, seeking judicial review. (Doc. 1).

### A. The ALJ Hearing

Plaintiff did not appear before the ALJ at the hearing on October 19, 2012. (Tr. at 152). Instead, Plaintiff's father acted as his representative and Plaintiff's mother ("Mrs. Melton") testified on his behalf. (Tr. at 155-56). Mrs. Melton initially testified that Plaintiff possessed a driver's license, drove himself to and from work, and handled his own finances.[2] (Tr. at 159). However, Mrs. Melton later testified that Plaintiff was unable to make any major financial decisions. (Tr. at 166). Mrs. Melton also testified that Plaintiff's psychological problems prevent him from being able to fully comprehend or respond to daily life occurrences. (Tr. at 167).

Mrs. Melton further testified that she and her husband had made repeated notifications to the SSA of Plaintiff's employment status, in writing, by telephone, and in person, beginning in late 2007 or early 2008. (Tr. at 142, 162-64, 169, 170, 172-73). Mrs. Melton also testified the notifications were made at Plaintiff's request and Plaintiff was aware his employment could affect his benefits. (Tr. at 161-64). Mrs. Melton testified that to her knowledge, Plaintiff had never been told that he should return any benefit checks that he received. (Tr. at 182-83). However, Mrs. Melton admitted that neither she

---

[1] The ALJ noted in his December 12, 2012 decision that $2,501 had already been recouped by the Internal Revenue Service from Plaintiff's federal income tax return. (Tr. at 25).

[2] At the oral arguments on September 15, 2015, Plaintiff's counsel claimed that during oral arguments Mrs. Melton "misspoke" and thought the ALJ was asking whether Plaintiff could handle cash. However, the record contains no evidence to support this claim.

- 2 -

nor Plaintiff had asked the SSA what they should do with the checks after they reported Plaintiff's employment. (Tr. at 183).

### B. The ALJ's Findings

On December 12, 2012, the ALJ returned an unfavorable ruling against Plaintiff. (Tr. at 19). The ALJ found: (1) Plaintiff was overpaid $39,417.10 in benefits between November 2007 and July 2010; (2) Plaintiff was at fault in causing and accepting the overpayment; and (3) recovery of the overpayment is not waived. (Tr. at 24-25). The ALJ noted that "[a]lthough [Plaintiff's] impairments are mental disorders, he did complete his GED, he drives himself to and from work, and he manages his own finances." (Tr. at 24). The ALJ also observed that though "claimant's parent's allege they help him with handling his money . . . the records do not indicate the need for a representative payee." (*Id*.) The ALJ found the Plaintiff "should be able to comprehend the basic information about reporting work activity to the SSA." (*Id*.) Further, the ALJ noted the evidence and testimony provided demonstrated Plaintiff was aware of his reporting requirements and that his benefits may be affected by his employment. (Tr. at 24-25). The ALJ found no representation by the SSA that "substantial gainful activity could be performed for years and that benefits would continue to be paid during that time." (Tr. at 24). Lastly, the ALJ rejected Plaintiff's claim that he was without fault in accepting the overpayment, instead finding that Plaintiff was notified by the SSA that work may affect his benefits and failed to inquire further when his benefit payments continued. (Tr. at 25).

## II. Standard of Review

The Court has the authority to review the final decision of the Commissioner as to any fact to determine whether it is supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . "). The Court will set aside the ALJ's findings only if they are "based on legal error or are not supported by substantial evidence." *Hiler v. Astrue*, 687 F.3d 1208, 1211 (9th Cir. 2012) (citing *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002)). Substantial evidence is "more than a

mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 2000) (citing *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989)). If the evidence can have more than one interpretation, "one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ is responsible for determining credibility and resolving ambiguities. *Andrews,* 53 F.3d at 1039 (internal citation omitted).

### III.   Legal Standard

The Social Security Act provides that repayment for SSI benefits may be waived "with a view to avoiding penalizing [an] individual . . . who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity and good conscience . . . " 42 U.S.C. § 1383(b)(1)(B); *see also* 20 CFR § 416.550. Thus, to qualify for waiver of repayment, a plaintiff must be (1) without fault; and (2) repayment would either defeat the purpose of the Act or be against equity and good conscience. *See* 42 U.S.C. § 404(b); *Quinlivan v. Sullivan*, 916 F.2d 524, 527 (9th Cir. 1990).

Fault, as it pertains to the overpayment of SSI benefits, is defined as:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

*Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir. 1990) (quoting 20 C.F.R. 404.507); *see also* 20 C.F.R. § 416.552. When determining fault, the SSA "will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . the individual has." 20 C.F.R. § 404.507. The fault determination is "highly subjective, highly individualized, and highly

1 dependent on the interaction between the intentions and state of mind of the claimant and
2 the peculiar circumstances of his situation." *Albalos v. Sullivan*, 907 F.2d 871, 873 (9th
3 Cir. 1990) (quoting *Elliott v. Weinberger*, 564 F.2d 1219, 1233 (9th Cir.1977), *aff'd in
4 part and rev'd in part sub nom. Califano v. Yamasaki*, 442 U.S. 682, 687–88 (1979)).

Additionally, even if the SSA was at fault for making an overpayment, "that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. The individual bears the burden of proving he or she is without fault with regards to the overpayment. *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir. 1984).

## IV.   Discussion

The outcome of this case hinges on the first step of the waiver analysis: whether the ALJ erred in determining that Plaintiff was at fault in connection with the overpayment of SSI. (Doc. 13 at 7; Doc. 15 at 6). Plaintiff argues that the ALJ failed to adequately consider Plaintiff's mental disabilities when making her determination of fault. (Doc. 13 at 7). Plaintiff further claims the Commissioner's decision was the result of "prohibited discriminatory treatment of Plaintiff at the hearing since [Plaintiff's] substantial mental impairments were not taken into consideration by the ALJ." (*Id.* at 9). Finally, Plaintiff claims the ALJ failed to consider that repeated notices had been given to the SSA concerning Plaintiff's employment and that these notices "are also requests for appropriate action or guidance." (*Id.*)

In response, Defendant asserts the ALJ's decision was based upon "substantial evidence and the proper legal standards." (Doc. 15 at 6). Defendant further asserts the ALJ properly considered the record and the testimony presented regarding Plaintiff's mental impairments, including that there was no representative payee on record; there was conflicting testimony presented regarding Plaintiff's mental capabilities; and that notification of Plaintiff's employment status was provided to the SSA by Plaintiff's parents at his request. (*Id.* at 7-11).

The ALJ denied Plaintiff's request for waiver of repayment, finding Plaintiff at

fault for causing and accepting overpayment. (Tr. at 24). She noted that Plaintiff had been repeatedly advised in writing that working may affect his benefits. (Tr. at 27, 38, 43, 49, 164-65). Additionally, Plaintiff requested his parents notify the SSA of his employment, which they did repeatedly, beginning in late 2007 or early 2008. (Tr. at 142, 162). The ALJ concluded Plaintiff "could have held onto his benefit checks while working" and "did not follow up in questioning how his benefits would be affected by continued work." (Tr. at 25).

Plaintiff's argues that the ALJ "made short shrift" of Plaintiff's mental disabilities and challenges, and did not consider them in making her decision. (Doc. 13 at 7). However, this is not supported by the record. The ALJ stated in her decision that "[a]though the claimant's impairments are mental disorders, he did complete his GED, he drives himself to and from work, and he manages his own finances." (Tr. at 24). Additionally, the ALJ noted that Plaintiff "does not have a representative-payee to assist him in managing benefits payments" and "[t]hese factors demonstrate he should be able to comprehend the basic information about reporting work activity to the SSA." *Id*. The ALJ's findings are supported by the testimony of Mrs. Melton, and demonstrate the ALJ did consider evidence and testimony pertaining to Plaintiff's mental limitations when making her determination. (Tr. at 158-59, 162).

Plaintiff cites *Fremont v. Sullivan*, 959 F.2d 240, 1992 WL 68263 (9th Cir. Apr. 7, 1992) (unpublished table decision) to support his argument. (Doc. 13 at 7-8). However, Plaintiff overlooks several important differences between *Fremont* and the present action. First, the plaintiff in *Fremont* claimed he was not aware of his duty to report earnings from another source. *Fremont*, 1992 WL 68263, at *1. This is vastly different from here, where Plaintiff was not only aware of his responsibility to notify the SSA of his employment status, but repeatedly did so. (Tr. at 142, 161-62). Second, in *Fremont* the court found the plaintiff without fault because there was insufficient evidence to show the plaintiff was aware of the requirement to report his income. *Fremont*, 1992 WL 68263, at *3. Here, the record and Mrs. Melton's testimony provide substantial evidence to infer

Plaintiff was aware his payments were incorrect. (Tr. at 27, 38, 43, 49, 52, 142, 162-64).

Plaintiff also claims the "uncontradicted evidence presented at the hearing was that [Plaintiff] cannot handle his own finances without assistance." (Doc. 13 at 7). However this claim is unsupported by the record and the testimony of Mrs. Melton, who testified first that Plaintiff handled his own finances and later that Plaintiff was unable to "handle any important financial matter" by himself. (Tr. at 159, 166). Additionally, Mrs. Melton testified that Plaintiff was aware that he was required to report his employment to the SSA, and requested his parents perform the notification. (Tr. at 161-62). Thus, there is contradictory evidence regarding the severity of Plaintiff's mental limitations. "The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

Plaintiff further claims the ALJ's failure to consider Plaintiff's mental impairments constituted discrimination on the basis of his disability.[3] (Doc. 13 at 9). However, the ALJ did consider evidence and testimony concerning Plaintiff's mental impairments when making her fault determination. (Tr. at 24). As previously discussed, the ALJ specifically mentioned Plaintiff's mental conditions in her decision and the evidence she considered. (*Id.*) The ALJ could have given greater weight to Mrs. Melton's testimony regarding Plaintiff's limitations. (Tr. at 160-61, 166-68, 183). However, the ALJ noted discrepancies between the record and the testimony presented by Mrs. Melton, specifically regarding Plaintiff's need for his parents to help with his finances. (Tr. at 24, 159, 166). The Court notes determinations of credibility fall within the purview of the ALJ. *See Andrews*, 53 F.3d at 1039-40 (citation omitted). Thus, because the ALJ did consider Plaintiff's mental impairments when making her decision, Plaintiff's claim of

---

[3] At the oral arguments on September 15, 2015, Plaintiff's counsel also claimed the ALJ violated Plaintiff's due process rights by failing to grant a continuance to the hearing conducted on October 19, 2012. However, Plaintiff's brief does not contain this claim. The Court will review "only those issues argued specifically and distinctly in a party's brief." *Carroll v. Nakatani*, 342 F.3d 934, 944 (9th Cir. 2003) (citing *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir.1994)).

1 discrimination fails.

2 Plaintiff's remaining claim is that the ALJ failed to consider the significance of 3 repeated notifications presented to the SSA for the purpose of notifying them of 4 Plaintiff's employment. (Doc. 13 at 9). Plaintiff contends that these notices are "also 5 requests for appropriate action and/or guidance." (*Id.*) However, even if the SSA is at 6 fault, it does not also relieve Plaintiff of any fault. *See* 20 C.F.R. § 404.507; 20 C.F.R. § 7 416.552. Plaintiff's request to his parents to notify the SSA demonstrates he was aware of 8 his responsibility to report his employment. (Tr. 163-64). Further, the repeated 9 notifications to the SSA concerning his employment demonstrate that Plaintiff was aware 10 his benefits may have been incorrect. (Tr. 163, 169). Therefore, the ALJ properly 11 determined Plaintiff accepted a payment "which he knew or could have been expected to 12 know was incorrect." *See* 20 C.F.R. § 404.507.

13 Plaintiff argues the ALJ violated "not only controlling precedent but also the 14 SSA's own rules" by devoting only a single line to the determination that collection of 15 the overpayment was not against equity and good conscience. (Doc. 13 at 10). However, 16 because the ALJ did not find Plaintiff to be without fault, the ALJ did not need to make a 17 determination regarding the financial requirement for a waiver or to discuss the subject at 18 length. *See Anderson*, 914 F.2d at 1124 ("The ALJ did not address whether appellant 19 meets the financial requirement for waiver . . . because of the finding that appellant was 20 at fault regarding the overpayment.").

21 **V. Conclusion**

22 Based on the foregoing, the Court finds the Commissioner's decision to deny 23 waiver for overpayment is supported by substantial evidence.

24 /

25 /

26 /

27 /

28 /

**IT IS ORDERED** that the decision of the Administrative Law Judge is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

Dated this 17th day of September, 2015.

James A. Teilborg
Senior United States District Judge